OPINION OF THE COURT
Edward J. Greenfield, J.
In this derivative action by Paul Marcus, a limited partner *90 in Site 35 Redevelopment Associates No. 1 (SRA No. 1), in which he charges that the general partners improperly diverted partnership funds and made certain improper loans, the defendant general partners move to dismiss the complaint for insufficiency pursuant to CPLR 3211. Plaintiff cross-moves for summary judgment (CPLR 3212) to compel repayment and for damages.
In 1985, SRA No. 1 was designated by the City of New York as the developer of a certain portion of the West Side Urban Renewal site located at 89th Street and Columbus Avenue, known as "Site 35”. The property was subdivided into three parts. On Site 35 A, a 15-story middle- and lower-income apartment building was to be erected. On Site 35 B, luxury condominium townhouses were to be built, and on Site 35 C, a public garden was to be constructed. In order to limit liability and maximize tax benefits, SRA No. 1 set up a new limited partnership, Columbus Townhouses Limited Partnership (CTLP). SRA No. 1 assigned all its rights and obligations with respect to Site 35 B (the townhouse section) with the consent of the city. CTLP assumed a purchase-money note and mortgage to the city in the sum of $273,000. The note and mortgage was due in October of 1987.
In 1986, CTLP obtained a construction loan of $5,000,000 from the DnC America Bank Corporation and a further loan of $10,712,500 in 1987. The individual defendants, as the sole shareholders of CTLP’s corporate general partner, Columbus Townhouses, Inc. (CTI), were required to personally guarantee 25% of the bank loans. Among the enumerated acts of default on the construction loans would be a failure of CTLP to meet its payments on the purchase-money mortgage given to the city, which could trigger the personal guarantees of the defendants.
On October 29, 1987, the city mortgage became due, and CTLP did not have sufficient funds available to satisfy the obligations. The city indicated it would extend the mortgage, but only at an interest rate of 24% per annum. To avert a default, the individual defendants, as general partners of SRA No. 1, arranged for SRA No. 1 to loan CTLP $408,500.
In this suit, plaintiff Marcus contended that this loan to CTLP was an improper diversion of SRA No. l’s funds and was arranged in defendant general partners’ self-interest to avoid their becoming liable on their guarantees. Defendants, in moving for dismissal of the complaint, contended that the loan was clearly for a proper partnership purpose.
*91 While the motion and cross motion were sub judice, CTLP arranged to repay its outstanding loans on July 28, 1989 and such loans have now been repaid to SRA No. 1 in full with interest. CTLP also made a distribution of available funds to each of CTLP’s partners following the sale of 36 condominium units. Plaintiff Marcus was a 9% limited partner in both SRA No. 1 and CTLP. Defendants now urge that in addition to the reasons previously set forth to warrant dismissal of the complaint, in the light of the repayment, the complaint is now moot and should be dismissed. Plaintiff does not agree, and contends that even if the loan complained about has now been paid, he is still entitled to an injunction against future loans or diversion of funds, the furnishing of future financial statements, and an order awarding counsel fees to plaintiff’s attorney.
Since plaintiff’s complaint was centered exclusively on the alleged impropriety of the SRA No. 1 loan to CTLP, and that has now been repaid, it is not necessary for the court to make a definitive ruling directing that that be done which has already been done. Since the immediate financial crisis which prompted the advance of funds to CTLP has now passed, it does not appear that any further loans are contemplated or that there is any prospect of future "improper use” of SRA No. 1 funds.
With respect to the demand for financial statements, it appears that certified financial statements of SRA No. 1 for the years 1985, 1986 and 1987 have already been supplied, and there is no reason to believe that plaintiff will not be afforded further financial statements as they are prepared.
That leaves as the sole issue for determination the request by each side for counsel fees. Partnership Law § 115-a, dealing with an action brought by a limited partner on behalf of the partnership, provides in subdivision (5): "If the action on behalf of the limited partnership was successful, in whole or in part, or if anything was received by the plaintiff or plaintiffs or a claimant or claimants as a result of a judgment, compromise or settlement of an action or claim, the court may award the plaintiff or plaintiffs, claimant or claimants, reasonable expenses, including reasonable attorneys’ fees, and shall direct him or them to account to the partnership for the remainder of the proceeds so received by him or them.”
In view of the repayment of the loan, the action has become moot, and it cannot be said that the action "was successful”. *92 Fees to the plaintiff are also authorized if, as a result of a compromise or settlement "anything was received by the plaintiff”. It is clear that in the circumstances here presented, there was no compromise or settlement, but rather a unilateral action by CTLP to repay the loans due. Inasmuch as CTLP already had an existing obligation to repay the moneys borrowed by March 31, 1989, the receipt of what was already due cannot be considered to be a benefit achieved for the partnership by plaintiff’s actions. Rather, the repayment appears to be the result of an improved financial situation. Although, in the light of the repayment, this court was not called upon ultimately to rule on whether or not the loans were proper or improper, the prospects of plaintiff’s success in the action were certainly open to question. Since Plaintiff’s action was mooted, it cannot be said that he is entitled to reimbursement for expenses and counsel fees.
Defendants, as the general partners, have requested indemnification for their own fees. Partnership Law § 115-c (4) permits indemnification to any general partner "who has been wholly successful on the merits or otherwise in the defense of an action”. Again, the mooting of the action makes it impossible to characterize either side’s position as wholly successful. Section 115-c (5) (b) alternatively permits indemnification of general partners "upon the opinion of independent legal counsel that indemnification is proper”, unless the general partner has been adjudged to have breached his duty. In this case, Arthur Toback, Esq., of the law firm of Horwitz, Toback & Hyman, has rendered an opinion as independent legal counsel in an eight-page letter, concluding that upon all the facts "the General Partners should be entitled to indemnification pursuant to New York Partnership Law Section 115-c.”
Plaintiff, in opposing indemnification, makes a conclusory statement that the author of the opinion letter "is patently not independent”, not based upon any substantiating facts, but because of the conclusions reached. The court finds no fault with the alleged failure of counsel to talk to both sides, since both sides agree that the facts are undisputed, and the outcome was to be determined by the interpretation of the relevant documents and the application of controlling law. Plaintiff’s quibble about the adequacy and accuracy of the wording of the opinion or the way in which the facts are presented does not demonstrate a lack of independence.
The question is whether, in the absence of a final court determination on the question of a breach of duty by a *93 general partner, the opinion of independent legal counsel in favor of indemnification should be honored. If there is no demonstrated lack of independence, and the opinions of counsel are reasonable in the light of the law and the facts, then the authorization for indemnification provided for under Partnership Law § 115-c (5) (b) will be respected by the court. The opinion of counsel is that of a presumed expert, and is to be treated with the same weight as the opinion of an appraiser whose evaluation is to control.
Counsel concluded that the loans to CTLP to prevent a default of the mortgage obligations did not breach any duty to the SRA No. 1 limited partnership. He concluded that the partnerships, which were empowered between them to deal with all of Site 35, were essentially one entire project. This was a reasonable conclusion because the partnership certificate of SRA No. 1 authorized it to acquire title to Sites 35 A, 35 B and 35 C and to improve, operate, manage, mortgage, lease, or transfer any portion thereof, and to engage "in any business, related or incidental, to one or more of the foregoing activities.” Counsel concluded that it was prudent for the general partners to arrange for repayment of the mortgage on Site 35 B by having CTLP borrow from SRA No. 1, with promissory notes to be paid in full with interest, within one year, and that it made eminent economic sense for the general partners to enter into this arrangement and avoid a catastrophic foreclosure by the city. It is not unreasonable to conclude that the loans made to CTLP, SRA No. l’s related entity in the development, with parallel ownership interests, were for a proper partnership purpose.
Further, the court concludes that it was reasonable for counsel to opine that the advances from SRA No. 1 were not motivated by self-interest and the desire of the general partners to insulate themselves from liability under their personal guarantees. Given the facts in the case, as even plaintiff concedes, had there been a default by CTLP, it was possible but unlikely that there would have been a foreclosure. Even if there had been, the value of the premises with improvements would have satisfied any claim for a mortgage balance due, so that the likelihood of the personal guarantees being triggered was quite remote. Under these circumstances, the legitimate business purpose of SRA No. 1 in preventing default and foreclosure, and in assuring the continuation of the entire development through the means of a one-year loan, could reasonably be characterized as a sound business and economic *94 measure, and not self-dealing, the moneys having been fully repaid, and there being no intimation that the general partners derived any personal benefit from the transaction whatsoever, except for the theoretical avoidance of the invocation of their personal guarantees.
The SRA No. 1 limited partnership lost nothing through the transaction, the loans were not surreptitious, and they were ratified by the partnership. They were for a limited period, and had been repaid in full with interest. Plaintiffs limited partnership interest was not substantially at risk, but may well have been protected by the transaction complained of. He has suffered no loss, and repayment of the notes, which was required even without this suit, does not constitute a recovery achieved at his behest.
There having been neither an adjudication, nor a compromise or settlement, the findings of independent legal counsel that there had been no breach of fiduciary duty and that the general partners are entitled to indemnification, is to be controlling, so long as those conclusions are based on a reasonable evaluation of the facts and the law. The court finds this to be the case, and therefore grants defendants’ motion insofar as it seeks indemnification.